IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

---

No. 99-31378

---

MARY KAY DUPRE,

Plaintiff-Appellant,

versus

CHARTER BEHAVIORAL HEALTH
SYSTEMS OF LAFAYETTE INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Western District of Louisiana

---

February 16, 2001

Before GOODWIN[1], GARWOOD and JONES, Circuit Judges.

GARWOOD, Circuit Judge:

Plaintiff-appellant Mary Kay Dupre (Dupre) appeals the district court's grant of summary judgment as a matter of law in favor of her former employer, defendant-appellee Charter Behavioral Health Systems of Lafayette (Charter). We affirm.

**Facts and Proceedings Below**

Dupre was employed by Charter in the newly-created position of "Mobile Assessment Coordinator" (MAC) from July 1, 1997 until July

---

[1]Circuit Judge of the Ninth Circuit, sitting by designation.

18, 1997. The essential functions of the MAC position included working eight hours a day, five days a week, as well as being on call twenty-four hours a day (which was alternated between Dupre and Jennifer Nichols, another employee). The MAC position was designed to respond to requests from outside medical providers for psychological assessments of their patients and to provide referrals for psychological hospitalization. Dupre has training in both business and psychotherapy–she has a masters degree in psychology and has completed some course work towards an MBA degree.

Dupre was late on two of the thirteen working days she was employed, absent on two days, and left work early on two days. Dupre suffered from a back condition known as "degenerative disc disease and degenerative facet joint disease." Dupre's condition required her to leave work early on July 1, 1997 for a follow-up medical visit in connection with a surgery she underwent on June 23, 1997. In addition, Dupre missed work on July 9 and July 17, 1997, in order to have follow-up surgical procedures performed on her back. Dupre obtained prior authorization from her supervisors at Charter for both absences. Dupre was also late to work twice. On one occasion, she phoned her supervisor in the morning and informed him she would be late due to pre-operative lab work that needed to be completed. On the other occasion Dupre had no explanation for her absence other than she had "messed up" her

schedule.  Finally, Dupre's immediate supervisor witnessed Dupre experiencing discomfort with her back on one occasion and permitted her to leave work early.

Dupre asked for, and received, permission to use a "certain chair that was more comfortable" and better for her back condition. However, when Dupre requested a special nurse's uniform with an elastic waistband that she claimed would not impinge on a device implanted in her back, Charter refused to grant her permission. Even without this special uniform, Dupre stated under oath in sworn documents filed with the EEOC that: "I was capable of performing the essential functions of my job without a reasonable accommodation.  Therefore, I never requested a reasonable accommodation."

On July 18, 1997, Charter terminated Dupre's employment. According to Dupre's deposition, she was called into a meeting with Cheryl Dronet, Charter's Human Resources Manager, and her immediate supervisor, Jamie Molbert.  During the meeting, Dronet informed Dupre that she was not meeting the requirements of the new job and would be let go.  Dupre alleges that after she asked Dronet for further explanation, Dronet stated that Charter was aware that "a while back, [she] couldn't sit at work," and informed her that this could render her unable to perform her job effectively at times, such as when she would be required to sit a long time at the hospital.  When Dupre asked "so this has to do with my back,

because I took off some days for my back ...?" Molbert replied to the effect that Dupre neglected to inform Charter of her back injury at the time she was hired.

Charter denied that it discharged Dupre because of disability, stating that its decision was based on her excessive absenteeism, which made her unqualified for a job in which she would have to be on twenty-four hour call, work nights and weekends, and be available for days at a time at a moment's notice. According to Charter, "excessive absenteeism made her an undependable employee."

On January 20, 1998, Dupre filed a Charge of Discrimination with the EEOC alleging that she was the victim of disability discrimination. On June 17, 1998, the EEOC notified Dupre of its finding that she had been terminated for a legitimate non-discriminatory business reason, and informed her that a Dismissal and Notice of Right to Sue would be issued. Dupre then sued Charter in the district court below, claiming that Charter terminated her employment because of a disability in violation of, *inter alia*, the Americans with Disabilities Act, 41 U.S.C. § 12112, *et seq*. (ADA).

In a memorandum opinion the district court indicated its intention to grant summary judgment for Charter based on our decision in *Taylor v. Principal Financial Group*, 93 F.3d 144 (5th Cir. 1996). According to the district court, Dupre failed to either request a reasonable accommodation for her alleged disability or produce summary judgment evidence that would allow a

reasonable trier of fact to find that Charter knew of any limitations arising from her alleged disability. The district court held that because Charter was not made aware of any specific job limitations, under the *Taylor* framework its ADA obligations to provide reasonable accommodation were never triggered. *See Taylor*, 93 F.3d at 164.

Since the applicability of *Taylor* had not been addressed by either party, the district court gave Dupre an opportunity to brief the court on why *Taylor* was not controlling. The parties filed supplemental briefs, but the district court thereafter finalized its original decision and entered an order granting Charter's Motion for Summary Judgment. Judgment was accordingly entered for Charter. Dupre now appeals.

## Discussion

We review *de novo* the grant of a motion for summary judgment, applying the same standard as the district court is required to. *McDaniel v. Anheuser-Busch, Inc.*, 987 F.2d 298, 301 (5th Cir. 1993). Summary judgment is appropriate when the record demonstrates "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). In summary judgment proceedings, the record is considered in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986). As to issues on which the non-movant would bear the

-5-

burden of proof at trial, summary judgment is appropriate unless the record contains evidence sufficient to sustain a finding in favor of the non-movant. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

The ADA prohibits discrimination in employment against qualified persons with a disability.[2] To establish a *prima facie* discrimination claim under the ADA, Dupre must show that she was disabled, was qualified for the job, and was the subject of an adverse employment action because of her disability. *Zenor v. El Paso Healthcare System, Ltd.*, 176 F.3d 847, 851 (5th Cir. 1999). *See also Burch v. Coca-Cola Co.*, 119 F.3d 395, 320 (5th Cir. 1997). Although the district court focused on whether Dupre had requested a reasonable accommodation, the fundamental issue in this case, which was raised by Charter below, is whether Dupre was disabled so as to come within the protection of the ADA. "Disability" as used in the ADA means: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). We will consider each variation of the statutory definition in turn.

---

[2] The ADA provides that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

**Substantially Limiting Impairment**

"[C]onsideration of [a claim under] subsection A of the definition [of disability] proceeds in three steps." *Bragdon v. Abbott*, 118 S.Ct. 2196, 2202 (1998). The plaintiff must (1) have a mental or physical impairment that (2) substantially limits (3) a major life activity. *Id.* Dupre argues that she was substantially limited in three major life activities: standing, sitting, and working. For purposes of this appeal, Charter concedes that sitting and standing are major life activities.[3] The parties also do not dispute that Dupre's back condition constitutes an impairment within the meaning of the ADA. However, not all impairments are serious enough to be considered disabilities under the statute. To be considered a "disability," an impairment must substantially limit a major life activity. *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 (5th Cir. 1995).

The ADA does not define either "substantially limits" or "major life activity," but the EEOC has promulgated regulations

---

[3] Under the relevant EEOC regulations, "[m]ajor life activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). This list is not meant to be exclusive, and the Appendix to § 1630 suggests that other major life activities could include lifting, sitting, or standing. *See* 29 C.F.R. § 1630, Appendix to Part 1630–Interpretive Guide on Title I of the Americans with Disabilities Act, § 1630.2(1). For purposes of this opinion we assume without deciding that sitting and standing are both major life activities.

under the ADA that define those terms.[4]  Whether an impairment is substantially limiting depends on "(1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its permanent or expected permanent or long-term impact." *Id.* (citing 29 C.F.R. § 1630, App., § 1630.2(j)).  Dupre claims that the limitation on her ability to sit and stand for long periods of time constitutes a substantial limitation of a major life activity. According to Dupre, her limitations in sitting require her to get up every hour and walk around, and her limitations in standing require that for every hour that she stands, she must walk or sit for a while.

In *Colwell v. Suffolk County Police Dep't*, 158 F.3d 635, 644 (2nd Cir. 1998), the Second Circuit considered whether police officers who had difficulty standing and sitting were substantially limited in a major life activity.  The officers complained that they had difficulty standing for "any period of time," could not sit for prolonged periods, and had to move around after sitting for too long.  *Id*.  The court held that none of these impairments were sufficiently substantial, "particularly when evaluated in light of ... 'the nature and severity of the impairment' as compared with the average person's ability...." *Id*. (quoting 29 C.F.R. § 1630.2(j)(2)).

---

[4]*But see Sutton v. United Airlines, Inc.*, 119 S.Ct. 2139, 2145 (1999).

In the case before us, Dupre's ability to sit or stand in one place for up to one hour at a time before having to walk around makes clear that the "condition, manner, or duration" under which she was able to sit or stand was not significantly restricted as compared with the average person. 29 C.F.R. § 1630.2(j)(1). *See also Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 186 (3rd Cir. 1999) (upholding summary judgment against an employee who required hourly breaks while sitting or walking because the employee's ability to stand and walk was not significantly less than that of an average person). Dupre was therefore not substantially limited in the major life activities of standing and sitting.

Dupre also claims that she was disabled because she was substantially limited in the major life activity of working. In order to prove that she was so limited, Dupre is required to demonstrate that her back injury precluded her from a class of jobs or a broad range of jobs. *See Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491 (1999); *Pryor v. Trane*, 138 F.3d 1024, 1027 (5th Cir. 1998). "'The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.'" *Pryor*, 138 F.3d at 1027 (quoting 29 C.F.R. § 1630.3(j)(3)(I)). "If jobs utilizing an individual's skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from

a broad range of jobs." *Sutton*, 119 S.Ct. at 2151.

Dupre argues that her impairment disqualifies her from all manual labor, and that therefore she was precluded from a broad range of jobs. However, Dupre has presented no evidence that she would be disqualified from all jobs requiring manual labor. Although Dupre testified she was unable to perform any manual labor, citing digging holes or repairing railroad track as examples, she also stated in her answer that she was capable of bending at the knees, walking a half mile, lifting up to thirty pounds, and driving a car for an hour. Dupre was also able to sit and stand for up to an hour at a time.

From these facts, it appears that Dupre was only precluded from jobs involving very strenuous physical activity (like laying track), prolonged standing or sitting, heavy lifting, or prolonged walking. There exist, however, many jobs involving only light labor that Dupre seemed perfectly capable of performing. In *Zenor v. El Paso Healthcare Systems, Ltd.*, 176 F.3d 847 (5th Cir. 1999), we found that a former pharmacist was not regarded as substantially limited in working since there was no evidence that he was unable to perform "any number of clerical, service-related, administrative" jobs within the hospital where he formerly worked. *Id.* at 861. An inability to engage in the kind of intense physical exertion required of some jobs hardly disqualifies Dupre from all

jobs involving manual labor.[5]  Moreover, the fact that Dupre obtained a job as a Social Services Director at a nursing home after her discharge suggests both that she "retain[ed] the ability to compete successfully with similarly skilled individuals" and that she was not therefore restricted from performing a broad range or class of jobs.  *Hamilton v. Southwestern Bell Telephone Co.*, 136 F.3d 1047, 1051 (5th Cir. 1998).  In light of the evidence Dupre presented, no reasonable juror could have concluded that she was substantially limited in the major life activity of working.  Accordingly, Dupre is not disabled within the meaning of 42 U.S.C. § 12102(2)(A).

**Record of Disability**

Dupre also claims that she has a record of a disability that Charter was aware of when she was fired.  *See* 42 U.S.C. § 12102(2)(B).  Dupre points to the "Employee Health Screening Form" she filled out for Charter as well as any information relating to Dupre's alleged disability that became known to Charter during its various interactions with Dupre.  The screening form indicated that

---

[5] Even if her claim regarding an inability to perform manual labor were true, Dupre would not necessarily be excluded from a substantial class of jobs.  Dupre's complaint states specifically that "[n]o manual labor...was required for the position" of Mobile Assessment Coordinator at Charter.  Dupre's alleged inability to perform manual labor would not bear on the "number and types of jobs utilizing similar training, knowledge, skills, or abilities ... from which the individual is also disqualified because of the impairment."  29 C.F.R. § 1630.2(j)(3)(B).  *See also Sutton*, 119 S.Ct. at 2151.

Dupre had back pain, that she was under the care of a physician for this pain, and that she had undergone surgery related to her back problem.

This evidence is insufficient to constitute a record of impairment under the ADA. The EEOC regulations provide: "Has a record of such impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." 29 C.F.R. § 1630.2(k). Therefore, not only must Dupre demonstrate that she has a record of an injury or impairment, but the evidence must show that her impairment limited a major life activity. *See Sherrod v. American Airlines*, 132 F.3d 1112, 1120-21 (5th Cir. 1998); *Burch v. Coca-Cola Co.*, 119 F.3d 305, 321 (5th Cir. 1997).

The screening form made only vague mention of the existence and treatment of Dupre's back problem and did not indicate whether or how this problem substantially limited any major life activity. In *Sherrod*, we ruled that a record of prior back surgery and disability leave, without more, was not a record of an impairment that substantially limits a major life activity. *Sherrod*, 132 F.3d at 1120-21. Dupre did not have a record of a disability within the meaning of 42 U.S.C. § 12102(2)(B).

**Regarded as Disabled**

Finally, Dupre argues that the record established a genuine

issue of fact as to whether Charter regarded her as disabled.[6] "In order to be 'regarded as' disabled a plaintiff must: ...have a physical or mental impairment that does not substantially limit major life activities, but be treated as such by an employer." *McInnis v. Alamo Community College District*, 207 F.3d 276, 281 (5th Cir. 2000). *See also* 29 C.F.R. § 1630.2(1). Additionally, Dupre must establish that the impairment, if it existed as perceived, would be substantially limiting. *McInnis*, 207 F.3d at 281.

It is undisputed that Charter knew that Dupre had some kind of back impairment. Dupre had filled out a screening form that indicated she had a back injury, had undergone surgery, and was currently taking medication for back pain. She requested a more comfortable chair and a uniform that did not aggravate an implant in her back. Dupre was also allowed to leave work early after her supervisor observed her having difficulties sitting in her chair. And, in her affidavit Dupre stated that when she was fired her immediate supervisor and Charter's Human Resources Manager referred to her back problem as if it were a reason for her termination.[7]

---

[6] Dupre does not specify in which major life activity Charter allegedly regarded her as substantially limited.

[7] Dupre's deposition reads, in relevant part:

> Q. Tell me about the discussion you were having during this discharge meeting regarding your back problems.
>
> A. It was short and brief.

Dupre argues that the record would allow a jury to find that Charter regarded her as having a substantially limiting impairment of a major life activity. However, Dupre was not in fact substantially limited in any major life activity and nothing in the record indicates that Charter's perception of Dupre's condition was in any way inaccurate. Even if we assume that Charter thought that Dupre's condition would cause her to be absent, there is no evidence that Charter thought that Dupre was unable to perform other jobs. The statements Dupre claims were made at her termination do indicate that Charter doubted that Dupre was capable of performing the required duties of the MAC position with the requisite consistency. But, an employer does not necessarily

---

Q. OK. Well, tell me as much of it as you remember.

A. I walked in and Jamie was sitting behind his desk and Sheryl was sitting like to the left of me. And I sat down like in this chair and Sheryl starts off, she says, we're going to have to let you go because it looks like-she didn't say it looked like. She says. you're not meeting the requirements or the standards of the job. And I said, what are you talking about? And she says-she says, well, a while back you couldn't sit at work, because I had had a procedure. I had trouble. She says, hypothetically, you know, one of the things that might come up in your job is sitting a long time at the hospital waiting. She said, what would you do? I said, well, I'd stand. So I said, this has to do with my back, because I took off some days for my back which you all-which Jamie, I pointed to Jamie, which you approved? And he says, you didn't tell us about your-I don't know whether he said back or that at the time you were hired. That was it....

regard an employee as having a substantially limiting impairment simply because it believes the employee is incapable of performing a particular job. *Deas v. River West, L.P.*, 152 F.3d 471, 480 (5th Cir. 1998). Nothing in the record, including Dupre's account of her firing, provides support for Dupre's claim that Charter perceived her as having more of an impairment than she actually had. Dupre has presented no evidence that Charter regarded her as substantially limited in any major life activity. The record is insufficient to support a finding that Charter regarded Dupre as disabled within the meaning 42 U.S.C. § 12102(2)(C).

## Conclusion

We may affirm a grant of summary judgment if there is any adequate basis in the record to do so on a ground properly raised below, regardless of the correctness of the trial court's ruling. *Rodrigue v. Western and Southern Life Ins. Co.*, 948 F.2d 969, 970 (5th Cir. 1991). Our holding that Dupre was not disabled is determinative in this case, and we therefore need not address the propriety of the district court's application of *Taylor v. Principal Financial Group*, 93 F.3d 144 (5th Cir. 1996), to the present case. Since the record indicates that Dupre was not disabled, she has no cause of action under the ADA, and summary judgment for Charter was appropriate. Accordingly, the order of the district court granting summary judgment is

AFFIRMED.