# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

_____

m 01-50186
_____

JOHNNY MORENO,

Plaintiff-Appellee,

VERSUS

PEPSI-COLA METROPOLITAN BOTTLING COMPANY, INC.,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas

_____

March 28, 2002

Before REAVLEY, SMITH, and DENNIS,
   Circuit Judges,

JERRY E. SMITH, Circuit Judge:[*]

Johnny Moreno appeals a summary judgment entered in favor of Pepsi-Cola Metropolitan Bottling Company, Inc. ("Pepsi"), in this title VII and Americans with Disabilities Act ("ADA") case. We affirm.

## I.

Moreno, who is hispanic, had worked for Pepsi since June 1986 as a field service mechanic in the marketing equipment management department. His duties involved installing and servicing cold beverage equipment in the Kileen-Waco-Bryan area of Texas. By 1992, Moreno had attained the position of master mechanic and was working under the

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

direct supervision of Billy Swindell, the marketing equipment manager.

In June 1997, Moreno inured his right knee while installing a piece of equipment. He returned to work after this incident but operated under a restriction to lift no more than thirty pounds. In September, he had arthroscopic knee surgery and subsequently returned to work under the same weight restriction. For a few weeks following the operation, he performed administrative duties, then received full-duty clearance and returned to regular work without restriction. In May 1998, he sprained his ankle while stepping out of a company vehicle; this injury did not limit his ability to perform his job.

In May 1998, Pepsi terminated Moreno, citing his insubordination for refusing to install an ice machine. The parties dispute Moreno's disciplinary track record before this incident. Pepsi points to six acts of misconduct that, coupled with the insubordination, justified the discharge: A customer complaint relating to Moreno's failure to maintain the customer's equipment, the swapping of on-call duty, failure to follow the company call-in procedure for planned absence, a reprimand for sleeping during company time, a charge of smoking in the warehouse, and a three-day suspension for poor performance in the installation of a dispenser.[1]

Moreno responds to only some of these

allegations of misconduct. He admits to the violation of the call-swapping procedure but notes that the man he swapped with (a white co-worker) was only reprimanded. As for the failure to follow proper absence procedures, Moreno contends he was never in violation of the policy, because Pepsi never provided him a copy of any written policy, and when asked to do so in discovery, produced a handbook from a different office. Moreno disputes the sleeping on the job allegation, claiming the disciplinary action report on the incident does not even mention he was asleep. Finally, he does not deny smoking in the company warehouse but notes there is a white employee who does, and notes the presence of ashtrays in the building. Notably, he does not respond to the allegations he was reprimanded and suspended for poor job performance while dealing directly with customers.

The final incident precipitating Moreno's termination involved Swindell's request that Moreno install an ice machine for a customer. Again, the parties dispute the facts. Moreno avers he was asked to install a 700-pound machine himself, but Pepsi claims Moreno was informed that there were a technician and a truck available to help with the installation.

When Swindell discovered the machine was not installed, he called Moreno, who informed him he had swapped call with another employee. Pepsi notes this was unauthorized and was not logged in at the dispatch office. The parties do agree that after Moreno informed Swindell of his swapped call status, he turned off his pager and phone, leaving Swindell with no way to contact him, and thus no way to coordinate the installation on time.

---

[1] Pepsi also notes an anonymous caller who claimed Moreno was working his own ice machine installation and repair business on company time. Moreno correctly responds that this accusation is hearsay and is not competent summary judgment evidence. *Fowler v. Smith*, 68 F.3d 124, 126 (5th Cir. 1995).

## II.

Moreno filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") in November 1998 and amended it in January 1999. He claims to have amended the charge once again, in May 1999, via a letter sent to the Texas Commission on Human Rights. This letter is not in the EEOC file. The sole basis of his claim of discrimination in these documents was disability.

The EEOC issued a right to sue letter in July 1999. Moreno claims to have sent a new charge to the EEOC in September 1999 alleging he was terminated also because of national origin. Moreno sued in September 1999.

## III.

Moreno offers two legal theories to support his argument that Pepsi discharged him unlawfully: a title VII claim based on national origin discrimination and an ADA claim based on limitations stemming from his knee injury. The district court dismissed both claims on summary judgment. Accordingly, we review that judgment *de novo*. *Walton v. Alexander*, 44 F.3d 1297, 1301 (5th Cir. 1995) (en banc).

Summary judgment is proper where "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). All inferences from the record must be construed in the light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986); *Walker v. Thompson*, 214 F.3d 615, 624 (5th Cir. 2000). For a plaintiff to survive summary judgment, there must be evidence in the record sufficient to sustain a finding in favor of the non-movant. *Little v. Liquid Air Corp.*, 37 F.3d 109, 1075 (5th Cir. 1994) (en banc).

## IV.

The ADA bars discrimination in employment against those with a disability who are otherwise qualified for a job. 42 U.S.C. § 12112(a). To establish a p*rima facie* case, a plaintiff must (1) have a disability, (2) be otherwise qualified, and (3) be subject to adverse employment action because of the disability. *Ivy v. Jones*, 192 F.3d 514, 515 (5th Cir. 1999).

"Disability" as used in the ADA means "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). An "impairment" includes almost all disorders or conditions affecting one of the body systems. 29 C.F.R. § 1630.2(h)(1).[2] A "major life activity" is usually defined by reference to the EEOC guidelines implementing the ADA. These include "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working;" also "sitting, standing, lifting, [and] reaching." 29 C.F.R. 1630.2(i); App. § 1630.2(i).

---

[2] More specifically, an impairment is

> Any physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine.

29 C.F.R. 1630.2(h)(1).

To be "substantially limited," a plaintiff must show an inability to perform one of the listed life activities up to the standards of an average person.[3] The question whether a

plaintiff is disabled for purposes of the ADA is a case-specific determination. *Toyota Motor Mfg., Inc. v. Williams*, 122 S. Ct. 681 (2002).

In his brief, liberally construed, Moreno claims he is either disabled or regarded as such in that he is substantially limited in the major life activities of lifting, walking, climbing, and working. We address these in turn.

A.

Moreno avers he is not able to lift in the manner of an average person and thus is disabled under the definitions laid out above. Moreno's statements as to specific limitations on his ability to lift are scant. The only concrete examples he has offered involve his ability to lift at least thirty pounds and his inability to lift 700 pounds (the weight of the ice machine Swindell allegedly required him to install solo). The ADA does not posit Atlas as the average person; Moreno's inability to lift more than a quarter ton has no relevance to the disability question. Even assuming Moreno could lift no more than thirty pounds, this limitation would not constitute a disability

---

[3] The regulation reads, in its entirety:

The term substantially limits means:

(i) Unable to perform a major life activity that the average person in the general population can perform; or

(ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity.

(2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:

(i) The nature and severity of the impairment;

(ii) The duration or expected duration of the impairment; and

(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

(3) With respect to the major life activity of workingSS

(continued...)

---

[3](...continued)
(i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

29 C.F.R. § 1630.2(j)(1),(2).

within the meaning of the ADA.[4] Moreno is not disabled because of his limitations in the major life activity of lifting.

### B.

Moreno's argument regarding the major life activity of walking amounts to his testimony that his needs to be more careful and cautious when walking and cannot walk as far as the average person his age. Minor deviations from the average person's ability to walk do not rise to the level of *substantial* limitations on one's ability to partake of this major life activity. *Talk v. Delta Airlines, Inc.*, 165 F.3d 1021, 1025 (5th Cir. 1999) ("It is clear, however, that moderate difficulty experienced while walking does not rise to the level of a disability."). Moreno is not disabled because of his limitations in the major life activity of walking.

### C.

Moreno also argues his knee injury renders him disabled in that he is unable to engage in the major life activity of climbing to the same degree as is an average person. Moreno does not offer any more definite explanation of how he is limited in climbing. If he means merely climbing that is attendant to walking, his argument is foreclosed by *Talk*. If he means climbing in a more vigorous sense, that argument has also been rejected by this circuit. *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 n.2 (5th Cir. 1996) (concluding that climbing is not a major life activity). Moreno is not disabled because of his limitations in the activity of climbing.

---

[4] *Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996) (holding that inability regularly to lift more than ten pounds did not substantially limit the major life activity of lifting).

### D.

Finally, we turn to the major life activity of working, but only after rejecting all other possible major life activities. App. 29 C.F.R. § 1630.2(j); *Dutcher v. Ingalls Shipbuilding*, 53 F.3d 723, 726 n.10 (5th Cir. 1995). To be substantially limited in the major life activity of working, a plaintiff must be precluded from a "class of jobs" or "a broad range of jobs." 29 C.F.R. § 1630.2(j)(3)(i); *Sutton*, 527 U.S. 471, 491 (1999).

Moreno has not offered any evidence he is unable to perform either a class or a broad range of jobs. Indeed, the summary judgment evidence reveals he is currently employed as a deliveryman for an auto parts wholesaler and also operates his own ice machine vending business. Moreno is not disabled because of his limitations in the major life activity of working.

### V.

Moreno argues that Pepsi "regarded" him as disabled. To be regarded as disabled for purposes of the ADA, the employer must believe the employee either

> (1) Has a physical or mental impairment that does not substantially limit major life activities but is treated by a covered entity as constituting such limitation; (2) Has a physical or mental impairment that substantially limits major life activities only as a result of the attitudes of others toward such impairment; [or] (3) Has none of the impairments defined in paragraphs (h) (1) or (2) of this section but is treated by a covered entity as having a substantially limiting impairment.

29 C.F.R. § 1630.2(l). Thus, for the employee

to be "regarded as" disabled, the employer must have a perception of the employee's disability, that, if true, would constitute a disability. *Murphy v. United Parcel Serv.*, 527 U.S. 516, 521-22 (1999); *Dupre* v. *Charter Behavioral Health Sys., Inc.*, 242 F.3d 610, 616 (5th Cir. 2001).

Moreno raises this "regarded as" argument for the first time on appeal. We routinely treat as waived those arguments advanced for the first time on appeal. *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Hernandez v. Hill Country Tel. Coop. Inc.*, 849 F.2d 139, 142 (5th Cir. 1988). Although we forego this waiver in extraordinary cases, Moreno does not present such a case. *N. Alamo Water Supply Corp. v. City of San Juan, Tex.*, 90 F.3d 910, 916 (5th Cir.1996).

Even were we to consider Moreno's newly-raised argument, we would be compelled to reject it. His "regarded as" argument stems almost entirely from his subjective belief that Pepsi thought he had an ADA disability. He supports this supposition by noting that Pepsi participated in a disability proceeding before the Texas Worker's Compensation Commission. Acknowledging that Moreno may have been impaired for purposes of worker's compensation does not mean he necessarily was disabled for purposes of the ADA.[5]

The summary judgment evidence shows that Pepsi allowed Moreno to work at a desk job and then returned him to full duty status a few weeks after his knee surgery. That Swindell asked Moreno to help him install the ice machine cuts strongly against any implication that Pepsi "regarded" Moreno as disabled. Moreno is not disabled within the meaning of the ADA, because his employer did not regard him as having any impairment that rises to the level of a disability under the ADA.

VI.

Moreno challenges his discharge on the ground of national origin discrimination.[6] In an EEOC "deferral state," a charge of discrimination must be filed with the EEOC not more than 300 days after the alleged adverse employment action.[7] 42 U.S.C. § 2000e-5(e)(1); *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000). Moreno was terminated by Pepsi on May 28, 1998; he filed a charge of discrimination on September 7, 1999, 467 days after the discharge.

Moreno's national origin claim is thus barred unless he can show his initial charge of disability discrimination, filed on November 23, 1998, triggered his national origin claim. Moreno notes that he completed the blank next to race with the appropriate designation ("Hispanic") on this November 23 charge. His initial charge and his subsequent amendment on January 11, 1999, make no mention of national origin discrimination, however.

Moreno relies entirely on *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 464 (5th Cir. 1970), which held that failure to mark the appropriate box on the EEOC charge form

---

[5] *Cf. Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795 (1999) (holding that disability for purposes of Social Security benefits is not necessarily the same as disability for purposes of the ADA).

[6] 42 U.S.C. § 2000e-2(a)(1).

[7] Texas is a deferral state. *See Huckaby v. Moore*, 142 F.3d 233, 238 (5th Cir. 1998).

does not preclude a suit premised on that theory of discrimination. *Sanchez* further held that a plaintiff's out-of-time amendment to an initial charge could add an additional theory of discrimination if the amendment contained "mere clarification and amplification of the original charge." *Id*. at 465. Where the out-of-time amendment alleges a new theory of discrimination and adds new facts to support that charge, the new theory of discrimination is time-barred. *Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985). In other words, the new theory of discrimination must rely on the facts alleged in the initial charge. *Id*.

Moreno's claim of national origin discrimination fails, because it is more analogous to *Hornsby* than to *Sanchez.* His amended EEOC charge of national origin discrimination alleges facts that have no predicate in his initial charge. The factual narrative in the initial charge describes his termination as stemming only from a disability or a perceived disability.

VII.

Moreno contends that the findings of the Texas Workforce Commission awarding him benefits should have *res judicata* effect in this federal lawsuit. This issue was not presented to the district court and is thereby waived. *Hernandez,* 849 F.2d at 142.

Were we to consider this argument, it would be foreclosed by precedent. We give a state agency the same deference it would receive in state court. *Univ. of Tenn. v. Elliott*, 478 U.S. 788, 799 (1986). The Texas Workforce Commission's decision is entitled to no deference in Texas state courts. TEX.

LAB. CODE ANN. § 213.007 (Vernon 2001).[8] Moreno's argument is without merit.

AFFIRMED.

---

[8] The statute reads,

> A finding of fact, conclusion of law, judgment, or final order made under this subtitle is not binding and may not be used as evidence in an action or proceeding, other than an action or proceeding brought under this subtitle, even if the action or proceeding is between the same or related parties or involves the same facts.

TEX. LAB. CODE ANN. § 213.007 (Vernon 2001).

7