IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 02-60056

Summary Calendar

_____


EDWARD T LINDSEY

                              Plaintiff-Appellant

v.


CHEVRON USA INC

                              Defendant-Appellee

_____

Appeal from the United States District Court
for the Southern District of Mississippi
No. 1:00-CV-379-BrR
_____

October 10, 2002

Before KING, Chief Judge, and WIENER and PARKER, Circuit Judges.

PER CURIAM:[*]

     Plaintiff-Appellant Edward T. Lindsey appeals from the

district court's decision granting summary judgment to Defendant-

Appellee Chevron U.S.A., Inc. on Lindsey's claims for race-based

_____

     [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

discriminatory discharge and hostile work environment in violation of Title VII of the Civil Rights Act of 1964, disability-based discrimination in violation of the Americans with Disabilities Act, and termination based on a request for leave in violation of the Family Medical Leave Act.  For the reasons set forth below, we AFFIRM the district court's grant of summary judgment to Chevron U.S.A., Inc.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 1984, Edward T. Lindsey, an African-American male, was hired by Chevron U.S.A., Inc. ("Chevron") to serve as a mechanic trainee in the refinery maintenance department.  In April 1990, Chevron promoted Lindsey to the position of refinery mechanic.  He remained in that position until his termination. While in the employ of Chevron, Lindsey also worked as a temporary supervisor on several occasions.

On February 22, 1997, Lindsey underwent surgery to receive a pacemaker in his heart.  He subsequently went on medical disability and received sick leave benefits.  Despite the fact that Lindsey's physician had released him to return to work on March 27, Lindsey did not resume his duties at Chevron until May 22, three months after his surgery.  When Lindsey returned to Chevron, he presented a note from his doctor informing his supervisors of the work limitation brought about by his heart condition.  On doctor's orders, Lindsey was to avoid working near

high voltage equipment.  Chevron placed Lindsey on paid leave while it searched for a temporary job assignment that would accommodate him.  On June 2, Chevron assigned Lindsey to a temporary clerical position and when that assignment ended, Chevron again placed Lindsey on paid leave until July 17, on which date Lindsey's physician removed the work restriction.

On April 20, 1998, Lindsey filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), contending that he had been discriminated against on the basis of race and disability.  On February 21, 2000, Chevron placed Lindsey on three-day disciplinary suspension without pay for excessive absenteeism and repeated tardiness over a three-month period starting in March 1999.  Lindsey's notice of suspension admonished that failure to improve his record of tardiness and absence from work could result in further disciplinary action, including the possibility of termination.

Beginning March 1, 2000, Lindsey failed to report to work for six consecutive work days.  On March 9, Lindsey's doctor informed Chevron that Lindsey had not been instructed to stay home after Lindsey underwent several medical tests, and instead he had been cleared to work.  On March 10, Chevron discharged Lindsey on account of his numerous absences from work.

On May 5, 2000, Lindsey filed a second EEOC charge, alleging that Chevron retaliated and discriminated on the basis of disability in discharging him.  On August 9, Lindsey filed this

3

lawsuit asserting that: (1) because of his race, he was denied a promotion, discharged, and endured a hostile work environment, all in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. 2000e et seq. (2000); (2) he was terminated in retaliation for filing his EEOC charge; (3) Chevron failed to accommodate his disability, in violation of the Americans with Disabilities Act ("ADA"), 29 U.S.C. 701 et seq. (1994); (4) he was denied leave time that was protected under the Family Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. 2601 et seq. (1994); and (5) under Mississippi law, Chevron intentionally inflicted emotional distress upon him.

On October 15, 2001, Chevron moved for summary judgment as to all of Lindsey's claims. In its Memorandum Opinion and Order of December 20, 2001, the district court granted summary judgment in favor of Chevron, finding that Lindsey had failed to present a genuine issue of material fact with regard to any of his asserted claims. Lindsey timely appealed the grant of summary judgment.


## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment to Chevron de novo, applying the same standard as the district court, e.g., Brown v. Bunge Corp., 207 F.3d 776, 781 (5th Cir. 2000), and ask whether the pleadings, depositions, and answers to interrogatories, together with the affidavits, demonstrate that no genuine issue of material fact remains and that the moving

4

party is entitled to judgment as a matter of law.  E.g., Boze v. Branstetter, 912 F.2d 801, 804 (5th Cir. 1990); FED. R. CIV. P. 56(c).  A factual dispute is genuine when a reasonable jury could return a verdict for the non-moving party.  Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248 (1986).

The substantive law dictates which facts are material, Stewart v. Murphy, 174 F.3d 530, 533 (5th Cir. 1999), and an issue is material if its resolution could affect the outcome of the action, Anderson, 477 U.S. at 248.  Moreover, in summary judgment determinations, the factual record is reviewed in such a way that all inferences are drawn in the light most favorable to the party opposing the motion.  E.g., Jurgens v. EEOC, 903 F.2d 386, 388 (5th Cir. 1990).  Accordingly, we review the evidence most favorably to Lindsey.

### III. LINDSEY'S RACE DISCRIMINATION CLAIMS

On appeal, Lindsey asserts two theories of discrimination under Title VII.  First, he claims that Chevron discharged him on the basis of race and second, he claims that he endured a racially hostile work environment while at Chevron.  As to the first theory, to establish a prima facie case of discriminatory discharge, Lindsey must show that: (1) he is a member of a protected group; (2) he was qualified for the position held; (3) he was discharged from his position; and (4) that he was replaced by someone outside of the protected group.  E.g., Byers v. Dallas

5

<u>Morning News</u>, 209 F.3d 419, 426 (5th Cir. 2000).  After Lindsey makes out a prima facie case of discrimination, Chevron must provide some legitimate, non-discriminatory reason for the employee's rejection.  <u>See</u> <u>id</u>. (citing <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792, 802-04 (1973)).  If Chevron proffers a legitimate, non-discriminatory reason for the employment action, Lindsey must come forward with evidence that Chevron's reason was a mere pretext for discrimination.  <u>See id</u>.[1]

To make out his prima facie case, Lindsey contends that he was a member of a protected class and that he was qualified to perform his job duties as assigned.  He further asserts that similarly-situated Caucasian employees were treated more favorably.  To explain, Lindsey provides the example of another Chevron employee, Joseph Guy, who was allegedly given adequate

_____

[1]  Under the Racial Discrimination section of his Amended Complaint, Lindsey merely asserts that he was "terminat[ed] . . . while on medical leave."  Perhaps because of Lindsey's conclusory pleading on the issue, the district court did not specifically address the elements of the discriminatory discharge claim in its opinion.  The court did, however, grant summary judgment on Lindsey's discriminatory denial of promotion claim.  Even though the district court did not specifically address the discriminatory discharge claim, the reason for granting summary judgment as to the discriminatory denial of promotion claim would equally apply.

Further, the court need not address whether Lindsey raised a genuine issue of material fact regarding his claim for discriminatory denial of promotion (or the retaliation and intentional infliction of emotional distress claims, for that matter) because he waived review of these issues by not incorporating them into his Brief.  <u>See, e.g.</u>, <u>Sherrod v. Am. Airlines</u>, 132 F.3d 1112, 1119 n.5 (5th Cir. 1998) (citing cases and FED. R. APP. P. 28).

6

warning prior to termination, while Lindsey was not provided with such a warning. Chevron counters that in relying on Lindsey's record of excessive absences and tardiness, it presented uncontested evidence of a legitimate, non-discriminatory reason for its employment action. Thus, Chevron claims, it satisfied its burden of production under the Title VII framework and that Lindsey has not raised a genuine issue of material fact as far as pretext is concerned.

Our assessment of the discriminatory discharge claim, however, need not involve the burden shifting analysis because Lindsey has failed to satisfy his prima facie case of discrimination. Lindsey does not rely on the proper standard for discriminatory discharge articulated by the Fifth Circuit. As a result, Lindsey fails to come forward with any evidence as to one essential element of his prima facie case, i.e., whether Chevron replaced him with someone outside of his protected group. There is no evidence in the record that Chevron replaced Lindsey with a non-African-American once he was terminated. Because summary judgment is appropriate if a plaintiff fails to establish facts supporting an essential element of his prima facie claim, e.g., Mason v. United Air Lines, 274 F.3d 314, 316 (5th Cir. 2001), Lindsey's claim for discriminatory discharge fails.

As to Lindsey's claim of a racially hostile work environment, this court has made it clear that a plaintiff must

7

show the following to satisfy a prima facie case: (1) he belongs to a protected group; (2) he was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.  E.g., Ramsey v. Henderson, 286 F.3d 264, 268 (5th Cir. 2002).  Harassment based on race affects a term, condition, or privilege of employment when it is sufficiently severe or pervasive so as to alter the conditions of the plaintiff's employment and create an abusive working environment. Id. (citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993)).

When determining whether a workplace constitutes a hostile work environment, courts consider the following circumstances: "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Id. (quoting Walker v. Thompson, 214 F.3d 615, 625 (5th Cir. 2000)).  All of the alleged circumstances must be taken into consideration when evaluating a claim of a racially hostile work environment.  See id.

In support of his claim, Lindsey argues that his supervisors at Chevron used racial epithets in his presence; that while he

was hospitalized, Chevron officials did not send him flowers or visit him in the hospital, which was allegedly unlike the treatment that several non-African-American employees received; that he was required to climb a ladder when he was dizzy; that a supervisor cursed at him; and that Chevron management allegedly allowed employees to hang Confederate flags in the maintenance trailer. Chevron argues that none of the alleged harassment rises to the level of affecting a term, condition, or privilege of Lindsey's employment.

Lindsey fails to present competent summary judgment evidence support a prima facie case. Of all the articulated incidences, the only acts of harassment alleged to be race-based are the racial epithets, the hanging of Confederate flags, and the lack of hospital visits. These incidences do not rise to the requisite degree of severity and pervasiveness that our precedents require. While a plaintiff may survive summary judgment by showing the existence of "routinely [made] racist remarks," Walker, 214 F.3d at 626, the instant case is distinguishable because Lindsey never provides evidence concerning the frequency (or a chronological description) of the epithets. Even viewing the evidence in the light most favorable to Lindsey, we cannot assume that the epithets were routine in nature. Further, Lindsey provides no evidence to suggest that these racial slurs, combined with Chevron's decision not to visit

Lindsey or send him flowers when at the hospital and the hanging of the flags, either unreasonably interfered with his work performance or caused him to feel physically threatened or humiliated.

In sum, no reasonable jury could return a verdict in favor of Lindsey on the ground that he experienced harassment that was sufficiently severe and pervasive. Accordingly, we again find it unnecessary to undergo the burden shifting analysis because Lindsey failed to establish his prima facie case for a racially hostile work environment. Summary judgment as to this particular claim was proper.

## IV. LINDSEY'S DISABILITY DISCRIMINATION CLAIM

Lindsey also argues that Chevron violated the ADA when it failed to accommodate his alleged disability. A plaintiff cannot assert that his employer is required to make reasonable accommodations to his physical or mental limitation until he satisfies the test for disability discrimination. See, e.g., Burch v. City of Nacogdoches, 174 F.3d 615, 619 (5th Cir. 1999). The first element of a prima facie case for disability discrimination is that the plaintiff was a qualifiedly disabled employee. E.g., Dupre v. Charter Behav. Health Sys. of Lafayette, Inc., 242 F.3d 610, 613 (5th Cir. 2001). Hence, the threshold issue in this case is whether Lindsey is considered disabled under the ADA.

10

To qualify as disabled, Lindsey must demonstrate that: (1) he has a physical or mental impairment that substantially limited one or more of his major life activities; (2) he has a record of such impairment; or (3) he is regarded as having such an impairment.  E.g., Aldrup v. Caldera, 274 F.3d 282, 286 (5th Cir. 2001).  The Supreme Court has defined major life activity as those activities that are "of central importance to daily life." Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, - - -, 122 S. Ct. 681, 691 (2002).[2]  A substantial limitation on such life activities would be a limitation that is "considerable" or "to a large degree."  Id.

On appeal, Lindsey asserts that Chevron failed to move expeditiously in providing him the necessary equipment that would assist him at work.  Such delay in accommodation, he continues, violates the ADA.  Chevron argues that Lindsey cannot satisfy his burden that he was terminated because of his alleged disability. Chevron also agrees with the district court's determination that there was no evidence to support the contention that Lindsey's heart condition, depression or diabetes substantially limited or impaired any of his major life activities.

Simply put, Lindsey's ADA accommodation claim falls short because he failed to adduce evidence suggesting that he was

---

[2]  Examples of major life activities include speaking, breathing, learning, and working.  E.g., Aldrup, 274 F.3d at 286.

qualifiedly disabled.  The summary judgment record provides no indication of whether Lindsey's heart condition, depression or diabetes substantially limited one or more major life activity. Lindsey has never provided evidence indicating that his medical conditions ever came close to limiting his major life activities considerably or to a large degree.[3]  Moreover, Lindsey has never contended that he had a record of such an impairment or that Chevron regarded him as having such an impairment, preventing him from establishing disability through these methods.

Because Lindsey could not raise a genuine issue of material fact as to the first element of a prima facie case for disability discrimination, he is precluded from claiming that Chevron was required to make reasonable accommodations to his physical condition.  Summary judgment was appropriate.[4]

## V. LINDSEY'S FMLA CLAIM

Lindsey also claims that Chevron violated the terms of the FMLA.  Under the FMLA, an "eligible" employee is entitled to up

---

[3]  In his deposition testimony, Lindsey stated that after his pacemaker surgery, he had no trouble walking, seeing, hearing, caring for himself, driving, and lifting objects.  In fact, his doctor cleared him for work a month after surgery.

[4]  While an in-depth discussion of the other elements of his prima facie case would only be superfluous, it is also worth observing that  Lindsey failed to raise a genuine issue of material fact as to whether he was none-the-less qualified to perform his job at Chevron and he was replaced by or treated less favorably than non-disabled employees

12

to twelve weeks leave when a serious health condition renders the employee unable to perform the functions of his or her position. E.g., Seaman v. CSPH, Inc., 179 F.3d 297, 302 (5th Cir. 1999).[5] A "serious health condition" is defined as "an illness, injury, impairment, or physical or mental condition that involves—(A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." E.g., Price v. Marathon Cheese Corp., 119 F.3d 330, 333-34 (5th Cir. 1997).

Specifically, Lindsey asserts that an FMLA violation occurred when Chevron gave him an incorrect form. He also contends that his thirty-four days of sick leave were allowed under the FMLA, which expressly provides a full sixty days of leave. Because he did not take leave time beyond that which was statutorily-allotted, Lindsey claims his termination upon his request for FMLA leave was unlawful. Chevron reasons that the FMLA is available only to employees who require leave due to serious health conditions and Lindsey offers no proof of a such a condition. Similarly, the district court found that because there was no documentation whatsoever relating to his medical condition or care at the time of his termination, Lindsey could

---

[5] The FMLA also provides leave when an employee needs to care for a newborn child, place a child for adoption or care for an adopted child, or care for family member with serious medical condition. None of these circumstances arises in the instant case, so consideration of them is unnecessary.

13

not show that he endured a serious medical condition for which leave was not granted.

We agree with the district court's assessment of Lindsey's FMLA claim. To survive summary judgment, Lindsey must first raise a genuine issue of material fact that he was eligible for FMLA-protected leave. Lindsey's claim boils down to the contention that Chevron retaliated against him when it terminated him upon his request for leave in March 2000.[6] The timing and justification for the requested leave, not the number of days of leave not taken, are critical here. Although the summary judgment record suggests that, in the past, Lindsey's medical treatments may have constituted serious medical conditions warranting FMLA-protected leave, there is no evidence in the record indicating that the leave requested in March 2000 was justified by a serious medical condition. Because Lindsey does not assert such a justification, he is not be eligible for protection under the FMLA for the leave request at issue. Hence, Lindsey cannot raise a genuine issue of material fact as to whether Chevron violated his rights under the FMLA. Summary judgment was appropriate.

---

[6] Contrary to Lindsey's assertion, there is no legal authority to support the claim that distribution of an incorrect form violates the FMLA.

14

## VI. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court granting summary judgment to Chevron on all asserted claims.