STRINGER, Judge.
Cheryl Lenard challenges the final order of the Florida Commission on Human Relations which found that Lenard was not entitled to damages under the Florida Civil Rights Act, §§ 760.01-.il, Fla. Stat. (2005) (“FCRA”), because she was not discriminated against on the basis of a disability. We affirm because Lenard failed to prove that she had a statutorily covered disability under the FCRA.
Lenard was employed as a residential staff assistant by A.L.P.H.A. “A Beginning” Inc. (ALPHA), a residential facility for pregnant women and new mothers and their babies. As a residential staff assistant, Lenard was required to be available to assist the residents in caring for themselves and their babies in a healthy manner. She was also responsible for maintaining staff notes on the residents during her shift. In addition, on occasion, she was required to drive residents to and from medical appointments.
While Lenard was employed by ALPHA, she was injured in a nonwork-relat-ed horseback riding accident. Ultimately, she was diagnosed with two herniated discs, and she underwent surgery for this condition. The surgery did not completely resolve Lenard’s complaints, and she continued to suffer pain and side effects from the injury. According to Lenard, she had difficulty sitting, standing, and walking for extended periods of time and difficulty driving. She also could not bend to lift heavy items. Lenard testified that these problems were markedly increased on the days that she had physical therapy appointments.
When Lenard was first injured, she took an extended leave from ALPHA. Upon her return to work, Lenard provided ALPHA with a discharge note from her physician. This note did not identify any restrictions on Lenard’s activities. Despite this, Lenard testified that she requested that the notebooks containing the staff notes on each resident be moved to a higher shelf so she would not have to bend down to retrieve them. According to Lenard, this request was denied.
Shortly after returning to work, Lenard began using a certain chair in the staff area that she testified was most comfortable for her back. She also began using a special pillow against the back of the chair. Neither of these items was prescribed by Lenard’s healthcare providers, and there was no testimony that the particular chair Lenard was using had any therapeutic benefits. Several months after Lenard returned to work, ALPHA remodeled the staff area and replaced all the chairs. The chair Lenard had been using was discarded.
During this same time, Lenard began missing shifts at work due to her continued back pain. ALPHA had a written attendance policy that required an employee to call no less than eight hours before the start of a shift if the employee was going to be absent so that ALPHA could arrange for another employee to cover the shift. ALPHA’S administrative director testified that this was necessary because state regulations required ALPHA to have at least two staff members present at the facility at all times. Despite this written policy, Lenard often called less than four hours before the start of her shift to report that she would not be coming to work. After Lenard had called in late on six different occasions, ALPHA placed her on a corrective action plan. Under this plan, Lenard was required to call no less than six hours before the start of her shift if she was going to be unable to work. Despite this corrective action plan, Lenard called in late on nine different occasions in less than two months. Because of this viola *621 tion of the corrective action plan, ALPHA terminated Lenard.
After being terminated, Lenard filed an “Employment Charge of Discrimination” with the Commission. In that charge, Lenard alleged that ALPHA had violated the FCRA by failing to provide her with reasonable accommodations for her disability and by terminating her based on her disability. Following an investigation, the Commission issued a determination of no cause.
Lenard subsequently filed a petition for relief with the Commission. In that petition, Lenard challenged the investigator’s conclusions that she did not have a disability as defined under the FCRA, that she was not discriminated against based on her disability, and that she was terminated for legitimate, nondiscriminatory reasons. Following an evidentiary hearing, the Administrative Law Judge (ALJ) concluded, like the investigator had, that Lenard did not have a disability as defined under the FCRA, that ALPHA had not discriminated against her based on a disability, and that ALPHA had terminated Lenard for legitimate, nondiscriminatory reasons. Following public deliberations, the Commission adopted the ALJ’s factual findings and denied Lenard relief. Lenard now challenges the Commission’s decision in this appeal.
Florida courts construe the FCRA in conformity with the federal Americans with Disabilities Act (“ADA”). McCaw Cellular Comme’ns of Fla., Inc. v. Kwiatek, 763 So.2d 1068, 1065 (Fla. 4th DCA 1999); Greene v. Seminole Elec. Coop., Inc., 701 So.2d 646, 647 (Fla. 5th DCA 1997). To state a prima facie case of disability discrimination under either the ADA or the FCRA, a petitioner must establish that (1) he or she has a statutorily covered disability; (2) he or she is a qualified individual; and (3) he or she was discriminated against because of his or her disability. Smith v. Avatar Props., Inc., 714 So.2d 1103, 1106 (Fla. 5th DCA 1998); see also Davidson v. Iona-McGregor Fire Prot. & Rescue Dist., 674 So.2d 858, 860 (Fla. 2d DCA 1996).
Here, the crux of the issues raised in this appeal is whether Lenard is “disabled” as that term is defined by the FCRA. If Lenard is “disabled,” ALPHA was required to offer her reasonable accommodations for her disability and was prohibited from terminating her because of her disability. If Lenard is not “disabled,” the protections of the FCRA are not triggered. After a thorough review of the record, we agree with the Commission that Lenard did not establish that she was “disabled” under the FCRA.
As a general rule, a physical or mental impairment is not automatically a “disability” under the ADA. Toyota Motor Mfg., Ky., Inc. v. Williams, 534 U.S. 184, 195, 122 S.Ct. 681, 151 L.Ed.2d 615 (2002); Albertson’s, Inc. v. Kirkingburg, 527 U.S. 555, 565-66, 119 S.Ct. 2162, 144 L.Ed.2d 518 (1999); Wimberly v. Sec. Tech. Group, Inc., 866 So.2d 146, 147 (Fla. 4th DCA 2004). Instead, to constitute a “disability” under the ADA, the impairment at issue must “substantially limit” a major life activity of the petitioner. Albertson’s, 527 U.S. at 565, 119 S.Ct. 2162; Wimberly, 866 So.2d at 147. The term “substantially limits” means “[u]nable to perform a major life activity that the avérage person in the general population can perform” or “[s]ig-nificantly restricted as to the condition, manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner and duration under which the average person in the general population can perform that same major life activity.” 29 C.F.R. § 1630.2(j)(1) (2005). In determin *622 ing whether an impairment “substantially limits” a major life activity, courts should also consider the nature and severity of the impairment, the expected duration of the impairment, and the expected long-term impact of the impairment. 29 C.F.R. § 1630.2(j)(2).
“Major life activities” are defined as “functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.” 29 C.F.R. § 1630.2(i). With respect to the major life activity of working, the term “substantially limits” means “significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.” 29 C.F.R. § 1630.2(j)(3)(i).
In a case factually similar to Lenard’s, the Fifth Circuit found that an employee who could not sit or stand for long periods of time was not disabled within the meaning of the ADA. In Dupre v. Charter Behavioral Health Systems of Lafayette, Inc., 242 F.3d 610, 611-12 (5th Cir.2001), Dupre suffered from degenerative disc disease, which she contended interfered with the major life activities of sitting, standing, and working. Dupre contended that' her limitations, in sitting required her to get up every hour and walk around and that, her limitations in standing required her to sit down for a while after every hour of standing. Id. at 614. After Dupre was late or absent from work numerous times, allegedly due to medical appointments and problems with her back, she was terminated from her job. Id. at 612. When Dupre claimed that she had been fired due to her disability, her employer asserted that she had not been fired because of her medical condition but rather because of “excessive absenteeism.” Id. Ultimately, the trial court entered summary judgment in favor of Charter.
On appeal, Dupre contended that she was, in fact, disabled due to her inability to sit or stand for extended periods of time. The Fifth Circuit rejected this argument,' stating, “Dupre’s ability to sit or stand in one place for up to one hour at a time before having to walk around makes clear that the ‘condition, manner, or duration’ under which she was able to sit or stand was not significantly restricted as compared with the average person.” Id. at 614 (citing Colwell v. Suffolk County Police Dep’t, 158 F.3d 635 (2d Cir.1998) (holding that police officers who had difficulty standing for any period of time and who could not sit for prolonged periods did not have impairments that were sufficiently substantial when compared with the average person to render them “disabled”), and Taylor v. Pathmark Stores, Inc., 177 F.3d 180 (3d Cir.1999) (holding that an employee who required hourly breaks while sitting or standing was not “disabled” because his ability to stand and walk was not significantly less than that of the average person)).
Further, on the issue of whether Dupre was substantially limited in the major life activity of working, the court found that Dupre had proved only that she was precluded from jobs that required strenuous physical activity, prolonged sitting or standing, heavy lifting, or prolonged walking. . Id. at 614-15. The court then noted:
“If jobs utilizing an individual’s skills (but perhaps not his or her unique talents) are available, one is not precluded from a substantial class of jobs. Similarly, if a host of different types of jobs are available, one is not precluded from a broad range of jobs.”
*623 Id. at 614 (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 492, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999)). In rejecting Dupre’s argument that her major life activity of working was substantially limited, the court stated that “[tjhereexist ... many jobs involving only light labor that Dupre seemed perfectly capable of - performing.” Id. at 615. Accordingly, because Dupre had not proved that she was disqualified from either a substantial class of jobs or a broad range of jobs, the court found that she was not substantially limited in the major life activity of working and therefore was not “disabled” within the meaning of the ADA. Id. at 615.
Here, as in Dupre, Lenard presented evidence that she was unable to sit or stand for prolonged periods of time. However, like in Dupre, Lenard presented no evidence that her ability to sit and stand was significantly less than that of the average person. Accordingly, the ALJ’s finding that Lenard was not “substantially limited” in the major life activities of standing or sitting was supported by competent, substantial evidence.
In addition, like in Dupre, Lenard did not prove that she was “substantially limited” in the .major life activity of working. Lenard did prove, and the ALJ rightly found, that Lenard suffered a permanent physical impairment. As in Dupre, Lenard also proved that this impairment precluded her from taking jobs that required strenuous physical activity, prolonged sitting or standing, heavy lifting, or prolonged walking. However, Lenard presented no evidence that her impairment precludes her from performing “either a class of jobs or a broad range of jobs in various classes” as required by the FCRA. Rather, as was the case in Dupre, there appear to be many jobs involving only light labor that Lenard seems perfectly capable of performing. Lenard attempted to counter this argument by asserting that she had been unemployed since being fired by ALPHA; however, her only testimony was that she had been unable to find employment in the same field. To be substantially limited in the major life activity of working, one must be precluded from more than one type of job, a specialized job, or a particular job of choice. Sutton, 527 U.S. at 492, 119 S.Ct. 2189. Thus, Lenard’s inability to find a position in the same field does not establish that she was “substantially limited” in the major life activity of working, particularly when she offered no evidence that her inability to find work was due to her impairment. Accordingly, the ALJ’s finding that Lenard’s impairment did not “substantially limit” her ability to perform the major life activity of working is supported by competent, substantial evidence.
When reviewing the findings and conclusions of a government agency, this court is not permitted to substitute its judgment for that of the agency if competent, substantial evidence supports the agency’s factual findings and the agency correctly applied the applicable statutory criteria. § 120.68(7), (8), Fla. Stat. (2005); City of Lake Wales v. Pub. Employees Relations Comm’n, 402 So.2d 1224, 1225 (Fla. 2d DCA 1981). Here, the ALJ’s finding, adopted by the Commission, that Lenard’s permanent physical’ impairment did not constitute a “disability” under the FCRA was supported by competent, substantial evidence. Accordingly, we affirm the Commission’s order.
Affirmed.
NORTHCUTT and LaROSE, JJ„ Concur.