**Clayton HEYNE, Plaintiff,**

v.

**HGI–LAKESIDE, INC., d/b/a, Lakeside Casino Resort, Defendant.**

**Civil No. 4:06–cv–0346.**

United States District Court,
S.D. Iowa.

March 7, 2008.

James L. Sayre, James L. Sayre, PC, Clive, IA, for Plaintiff.

Greg A. Naylor, Whitfield & Eddy PLC, West Des Moines, IA, for Defendant.

## ORDER

RONALD E. LONGSTAFF, Senior District Judge.

THE COURT HAS BEFORE IT Defendant HGI–Lakeside, Inc.'s ("HGI") motion for summary judgment filed November 15, 2007. Plaintiff Clayton Heyne ("Heyne") filed a response on December 26, 2007, which was supplemented on January 11, 2008. HGI filed a reply on January 8, 2008, which was supplemented on January 24, 2008. The motion is now considered fully submitted.

## I. BACKGROUND

The following facts either are not in dispute or are viewed in a light most favorable to Heyne.

Clayton Heyne was originally hired by the Grace Companies ("Grace") as a table games dealer at Lakeside Casino Resort on January 1, 2000. HGI–Lakeside, Inc. ("HGI") purchased the casino and resort on February 1, 2005, on which date Heyne began working for the new corporation. Throughout his employment with Grace and HGI, Heyne preferred to deal cards at a sit-down table, due to the fact that his chronic back pain become progressively worse the longer he stood.[1] During this time, Heyne would usually be assigned to a sit-down table. Occasionally, however, he was assigned to a stand-up table, and was able to stand for three to five hours at a time.

After HGI took over ownership of the casino, Heyne began to be assigned to stand-up tables on a regular basis. At some point in the spring of 2005, Heyne was instructed by Table Games Supervisor Brian Rowdybush that he needed to bring a medical note if he wanted to continue to be assigned to a sit-down table for each shift.[2] On June 20, 2005, Heyne gave Rowdybush a medical note written by Wilson Rigler, M.D. The note recommended that Heyne be restricted to standing for two hours at a time with a period of one

---

**1.** Heyne has suffered from chronic back pain since he was involved in an automobile accident in the 1960s. Since his accident, Heyne has been employed in a number of different jobs, including as an electrician and running his own home improvement business for many years. He regularly engaged in tasks such as kitchen remodels, bathroom remodels, siding, windows, drywalling, painting, and electrical work. As of the time of Heyne's deposition in April 2007, he was still doing carpentry work including building and installing cabinets and finishing basements. Heyne testified that he is able to do all of the basic tasks of living including such things as

grooming himself, showering, dressing, cleaning the house, picking things up, raising dogs, yard work, including snow removal, etc. Walking does not bother him, and he exercises regularly.

**2.** According to HGI, the casino made an effort, starting in late March 2005, to eliminate perceived favoritism in shift and game assignments by requiring that dealers rotate to different games and different shifts. This was done to ensure that all employees were treated equally and to avoid any potential for collusion between customers and dealers.

hour of sitting or resting in between periods of standing. After he delivered the note from Dr. Rigler, Heyne was permitted to deal from a sit-down table until a meeting could be arranged with human resources and his manager to discuss the impact of Dr. Rigler's note on his work assignments.

On July 8, 2005, Heyne met with Human Resources Manager Carol Eckles and Table Games Manager Kevin Ryan to discuss Heyne's medical restrictions. It is undisputed that Heyne was placed on leave shortly after this meeting, and has not returned to work at HGI. Heyne was taken off the active employment payroll on August 3, 2005.

During the course of the meeting, after discussing Heyne's back problems and Dr. Rigler's note, HGI informed him that it was unwilling to accommodate the standing restrictions recommended by Dr. Rigler,[3] and told him that he needed to be able to stand for an entire eight-hour shift. HGI placed him on a forced, unrequested medical leave,[4] and was told that he would have three months to be in a position to stand up and deal as required. Heyne viewed this action by HGI as a termination of his employment because he knew that he could never be in a position to stand and deal for an entire shift.[5]

Heyne filed his present complaint against HGI–Lakeside on July 24, 2006, alleging disability discrimination and retaliation in violation of the Americans With Disabilities Act ("ADA") and retaliation in violation of the Family Medical Leave Act ("FMLA").[6] In the present motion, HGI argues that (1) Heyne is not "disabled" under the ADA, and therefore, cannot succeed on his disability discrimination claim under the ADA; (2) Heyne was not a victim of a retaliatory discharge under the ADA; and (3) Heyne was not a victim of a retaliatory discharge under the FMLA.

## II. ANALYSIS AND APPLICABLE LAW

### A. Standard for Summary Judgment

Summary judgment is properly granted when the record, viewed in the light most

---

**3.** Heyne told management that he was willing and able to comply with Dr. Rigler's restrictions to standing for only two hours at a time.

**4.** In his briefing, Heyne characterizes this as forced FMLA leave.

**5.** HGI disputes Heyne's version of the facts. According to HGI, Heyne told his supervisors that he always wanted to be assigned to a sit-down table despite the fact that Dr. Rigler's note recommended that he could stand for two hours at a time. The supervisors gave Heyne three options:

1) Comply with Dr. Rigler's note as written;
2) Take FMLA leave if he wanted to further confer with his doctor about his restrictions or if he wanted time to recover from his sore back; or
3) Bring in a new doctor's note which was in harmony with his demand to sit while dealing.

HGI claims that Heyne became upset and told his supervisors that he did not want to return to his physician, that he did not and would not take FMLA leave, and that he wanted to continue to sit and deal. At that point, he walked out of the meeting, never to return. Several days after the meeting, Heyne was placed on temporary administrative leave and was sent optional FMLA paperwork. Heyne did not report to work, contact HGI, seek reinstatement to active employment, or make any effort to clarify whether he would comply with the recommended restrictions in Dr. Rigler's note. Heyne was taken off the active employment payroll on August 3, 2005.

**6.** Heyne's complaint also alleges retaliation in violation of 42 U.S.C. § 2000e–3. The "unlawful employment practices" prohibited under 42 U.S.C. § 2000e pertain to employment practices based on an "individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a). There is no allegation in Heyne's complaint, nor does the evidence suggest, that HGI discriminated against Heyne on any of these bases.

favorable to the nonmoving party, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); *Walsh v. United States,* 31 F.3d 696, 698 (8th Cir.1994). The moving party must establish its right to judgment with such clarity there is no room for controversy. *Jewson v. Mayo Clinic,* 691 F.2d 405, 408 (8th Cir.1982). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248, 106 S.Ct. 2505. "As to materiality, the substantive law will identify which facts are material.... Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### B. Discrimination under the ADA

Heyne first argues that HGI discriminated against him on the basis of a disability in violation of the ADA.[7] To establish a prima facie case of disability discrimination under the ADA, a plaintiff must show that:

(1) The employee is disabled within the meaning of the ADA;

(2) The employee is qualified (with or without reasonable accommodation)

to perform the essential functions of a job; *and*

(3) The employee suffered an adverse employment action because of the disability.

*Henderson v. Ford Motor Co.,* 403 F.3d 1026, 1034 (8th Cir.2005). The initial burden of establishing these elements rests with the plaintiff. *Id.* For the reasons discussed below, Heyne cannot establish that he is disabled within the meaning of the ADA, and therefore, his claim for discrimination under the ADA fails as a matter of law.

Under the ADA, the term "disability" is defined as:

(A) A physical or mental impairment that substantially limits one or more major life activities of such individual;

(B) A record of such an impairment; *or*

(C) Being regarded as having such an impairment.

*See Raytheon Co. v. Hernandez,* 540 U.S. 44, 49, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003); 42 U.S.C. § 12102(2). Heyne alleges that he can establish a disability under the first and third prongs of 42 U.S.C. § 12102(2).[8]

#### 1. A physical or mental impairment that substantially limits one or more major life activity

As an initial matter, there appears to be no dispute that Heyne's chronic back pain

---

**7.** According to Heyne, because HGI refused to provide reasonable accommodation for his chronic back pain, Heyne was the victim of a constructive discharge.

**8.** Heyne makes no explicit argument that he has a "record of impairment." Under the ADA, a "record of impairment" means that an employee "has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities." *Taylor v. Nimock's Oil*

*Co.,* 214 F.3d 957, 961 (8th Cir.2000) (citing 29 C.F.R. § 1630.2(k)). "In order to have a record of a disability, an employee's 'documentation must show' that she has a history of or has been subject to misclassification as disabled." *Id.* (internal citation omitted). The Court notes that the record is devoid of any evidence showing any "record of impairment," other than perhaps Heyne's claim that he had chronic back problems for many years, dating back to the early 1960s.

constitutes a "physical impairment" under the ADA. The "major life activity" which Heyne claims is substantially limited by his back pain, however, is not entirely clear. At one point, Heyne appears to claim that he is referencing *standing,* arguing that his back problems "limit[ ] his ability to stand for any extended period of time." Plaintiff's Br. at 13. However, Heyne also cites case law which suggests he is referring to the "major life activity" of *working. See* Plaintiff's Br. at 13 (citing *Cooper v. Olin Corp.,* 246 F.3d 1083, 1089 (8th Cir.2001)). In either case, both standing and working have been recognized as major life activities under the terms of the ADA. *See Wood v. Crown Redi–Mix, Inc.,* 339 F.3d 682, 684–85 (8th Cir.2003) (noting that the proposition that standing and working constitute major life activities "is consistent with controlling precedent.").

■ Regardless of the major life activity asserted, however, Heyne cannot establish that such activity is "substantially limited" by his chronic back pain. A physical or mental impairment is " 'substantially limiting' if it renders an individual unable to perform a major life activity that the average person in the general population can perform, or if it significantly restricts the condition, manner, or duration under which an individual can perform a particular major life activity as compared to an average person in the general population." *Fjellestad v. Pizza Hut of America, Inc.,* 188 F.3d 944, 948–49 (8th Cir.1999) (citing 29 C.F.R. § 1630.2(j)). Courts consider such factors as "(1) the nature and severity of the impairment; (2) its duration or anticipated duration; and (3) its long-term impact." *Id.* at 949 (citing 29 C.F.R. § 1630.2(j)).

Heyne makes no allegation that he is "unable" to stand. To the contrary, the

record before this Court establishes that, at the very least, Heyne could stand for two hours at a time, provided that he was permitted to sit or rest between periods of standing. Therefore, the only question is whether the ability to stand for only two hours at a time without significant pain constitutes a "substantial limitation" on the major life activity of standing under the terms of the ADA.

Several circuits have addressed the general question before the Court—that is, at what point a time limit on the ability to stand without pain constitutes a "substantial limitation" on the major life activity of standing. In *Williams v. Excel Foundry & Mach., Inc.,* 489 F.3d 309 (7th Cir.2007), the plaintiff argued that "his inability to stand for more than thirty to forty minutes at a time without briefly sitting or lying down to alleviate discomfort, and his inability to balance on one leg, constitute significant restrictions on the activity of standing." *Id.* at 311. In rejecting the plaintiff's claim, the Seventh Circuit held that "[b]ecause we also believe that thirty to forty minutes is not a 'very brief' period, we find that Williams's inability to stand for longer periods does not constitute a substantial limitation on the major life activity of standing." *Id.* at 312.[9]

In *Dupre v. Charter Behavioral Health Sys. of Lafayette, Inc.,* 242 F.3d 610, 614 (5th Cir.2001), the Fifth Circuit reached a similar conclusion in the case of a plaintiff suffering from degenerative disc disease who argued that the limitation on her ability to sit and stand for long periods of time constituted a substantial limitation of a major life activity. According to the plaintiff, "her limitations in standing require that for every hour that she stands, she must walk or sit for a while." *Id.* The

---

9. The court also noted that "common conditions, like excess weight and back pain, impair an individual's ability to stand for long periods or on one leg. But all persons impaired by virtue of common affliction cannot be disabled." *Williams,* 489 F.3d at 311.

court held that the plaintiff's "ability to sit or stand in one place for up to one hour at a time before having to walk around makes clear that the 'condition, manner, or duration' under which she was able to sit or stand was not significantly restricted as compared with the average person." *Id.*

This Court agrees with the logic of these cases and holds that the ability to stand in place for only two hours is not a substantial limitation on the major life activity of standing under the ADA. The Court is sympathetic to the fact that back pain causes great difficulty in the lives of millions of Americans, of which Heyne is apparently one. However, Heyne's back pain does not constitute a "substantial limitation" on the major life activity of standing.

To the extent that Heyne argues that his back pain is a "substantial limitation" on the major life activity of working, his claim also fails. "To be regarded as substantially limited in the life activity of working, a plaintiff must be regarded as 'significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities.'" *Cooper v. Olin Corp.*, 246 F.3d 1083, 1089 (8th Cir.2001) (citing 29 C.F.R. § 1630.2(j)(3)(i)); *see also Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 491, 119 S.Ct. 2139, 144 L.Ed.2d 450 (1999) ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs.").

There is *nothing* in the record before this Court to suggest that Heyne is "significantly" restricted in his ability to work a class of jobs or a broad range of jobs in various classes compared to the average person with similar skills and abilities. On the contrary, Heyne maintains that he could perform the same job he previously had—a casino table dealer—if he were only required to stand for two hours at a time, or if he were permitted to sit and deal. Heyne's back pain is not a "substantial limitation" on the major life activity of working.

### 2. Being regarded as having an impairment that substantially limits a major life activity

■ Heyne also contends that HGI regarded him as being disabled. There are two ways in which a plaintiff can establish proof under the "regarded as" prong under the ADA: (1) the employer mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) the employer mistakenly believes that an actual, non-limiting impairment substantially limits one or more major life activities. *Sutton*, 527 U.S. at 489, 119 S.Ct. 2139. "In both cases, it is necessary that a covered entity entertain misperceptions about the individual—it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting." *Id.*

The only argument that Heyne offers in his brief in support of his claim that HGI regarded him as disabled is that "the forced, unrequested placement of the Plaintiff on FMLA leave speaks volumes about the attitude of the Defendant." Plaintiff's Br. at 13. However, Heyne offers no explanation of, or citation to the record to establish what that attitude might be. The Court fails to see why placing him on forced, unrequested medical leave suggests that HGI regarded Heyne as disabled. If anything, placing Heyne on medical leave suggests that HGI believed Heyne to be capable of performing his assigned job responsibilities—*i.e.* to stand and deal for the majority of his

shift—and that he simply needed time off to restore his health.[10]

Even accepting Heyne's version of the facts as true, this Court finds no evidence to support Heyne's assertion that HGI "regarded" him as being disabled. On the contrary, Heyne admits that, prior to producing Dr. Rigler's note, he had never given any medical documentation to HGI or Grace regarding his condition. Appendix to Def. Motion for Summary Judgment at 33, Heyne Dep. at 57. He had never taken medical leave before. *Id.* at 38, Heyne Dep. at 63. No one at HGI ever made any discriminatory statements to Heyne or told him that he was unable to work at the casino due to his back condition. Plaintiff's Responses to Defendant's Statement of Material Facts at § 7. While there is evidence in the record suggesting that other casino employees were aware that Heyne suffered from back pain, this does not suggest that HGI (or anyone, for that matter) regarded him as disabled. Heyne, in fact, admits that back pain is a common occurrence amongst table dealers, and even that it is not uncommon for table dealers to collapse while dealing. *Id.* at § 8. Even Heyne's own attending physician, Dr. Rigler, did not believe Heyne to be disabled. Plaintiff's Statement of Material Facts at § 25. In short, Heyne points to no evidence in the record to suggest that HGI believed anything about Heyne other than what Dr. Rigler's note and Heyne himself told them—that Heyne had difficulty standing for more than two hours at a time. This does not establish that Heyne was "regarded as" being disabled.

For the reasons discussed above, viewing the facts in a light most favorable to Heyne, he cannot establish that he has a physical or mental impairment that substantially limits one or more major life activity, or that HGI regarded him as being disabled. Heyne's claim of discrimination under the ADA fails as a matter of law.

### C. Retaliation under the ADA

■ Heyne also alleges that HGI retaliated against him for seeking accommodation for his back pain in violation of the ADA. In order to establish a prima facie case of retaliation under the ADA, a plaintiff must establish that:

(1) He engaged in a statutorily protected activity;

(2) He suffered an adverse employment action; and

(3) There was a causal link between the protected activity and the adverse employment action.

*Stewart v. Independent School Dist. No. 196*, 481 F.3d 1034, 1042–43 (8th Cir.2007). In order for a plaintiff to satisfy the first element of a prima facie case of retaliation, he must have a good faith, objectively reasonable belief that his activity is protected by statute. *See Wallace v. DTG Operations, Inc.*, 442 F.3d 1112, 1118 (8th Cir. 2006) ("[A]s long as a plaintiff had a reasonable, good faith belief that there were

---

**10.** This Court struggles to understand why an employer would place an employee on FMLA leave—a vehicle designed specifically to allow an employee to take time to restore his health, without penalty, to a point where he can again perform his job again—if the employer regarded the employee as being disabled. The suggestion made by Heyne appears to be that HGI *knew* that Heyne could never be able to stand and deal for his entire shift, and therefore, HGI was constructively discharging him by placing him on FMLA leave. Even if true, it does not establish that Heyne was "regarded" as disabled. While such actions may be regarded as insensitive or unfair, they do not establish that HGI mistakenly believed that Heyne had a physical impairment that substantially limits one or more major life activities, or that HGI mistakenly believed that an actual, non-limiting impairment substantially limits one or more major life activities.

grounds for a claim of discrimination or harassment, the success or failure of a retaliation claim is analytically divorced from the merits of the underlying discrimination or harassment claim.").

■ Heyne's argument appears to be that his request to receive special accommodation for his back injury—*i.e.* being permitted to sit down and deal—constituted protected statutory activity under the ADA, or least that he had an objectively reasonable belief that it did. This Court disagrees. As an initial matter, as discussed above, Heyne is not disabled within the meaning of the ADA. Therefore, Heyne must be able to demonstrate that he had an objectively reasonable belief that his requests to receive accommodation for this back pain were statutorily protected activity. In other words, Heyne must demonstrate that he had an objectively reasonable belief that his back pain rendered him disabled.[11] For the reasons discussed below, he cannot.

Heyne's belief that he was disabled is apparently based on his claim that he has had chronic back problems for many years, his own testimony that he has great difficulty standing for more than two hours, and Dr. Rigler's note recommending that he be restricted to two hours of standing at a time. Plaintiff's Br. at 12. As discussed in detail above, however, during the many years during which Heyne suffered from chronic back pain he regularly engaged in a variety of physically strenuous tasks which included kitchen remodels, bathroom remodels, siding, windows, drywalling, painting, and electrical work. As

of the time of Heyne's deposition in April 2007, he was *still* doing carpentry work including building and installing cabinets and finishing basements. In addition, Heyne can stand for up to two hours at a time without significant pain and even his own attending physician does not believe that Heyne is disabled. Given the circumstances discussed above, this Court finds that any belief by Heyne that he was disabled is simply not objectively reasonable. HGI's motion for summary judgment with respect to Heyne's claim of retaliation under the ADA is granted.

**D. Discrimination under the FMLA**

■ The FMLA entitles qualified employees to take up to twelve weeks of unpaid leave, without fear of termination, when the leave is taken for "a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). Two types of claims exist under the FMLA: (1) interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act; and (2) retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act. *Stallings v. Hussmann, Corp.*, 447 F.3d 1041, 1050 (8th Cir.2006). Heyne's apparent argument is that HGI retaliated against him for seeking accommodation for his back pain by forcing him to take unrequested FMLA leave, with conditions for return that it knew Heyne could not meet.[12]

---

**11.** It is not enough for Heyne to claim that he believed he was entitled to accommodation for his back pain as a general matter. He must demonstrate that "he had a good faith, objectively reasonable belief that he was entitled to those accommodations under the ADA." *Standard v. A.B.E.L. Serv., Inc.*, 161 F.3d 1318, 1328 (11th Cir.1998). This re-

quires a showing that he had an objectively reasonable belief that he was disabled. *Id.*

**12.** In his brief, Heyne argues that "the basis for [his] claim in the case at bar" is that he suffered an "adverse employment action" in that HGI "knowingly put the Plaintiff on a forced, unrequested FMLA leave, with conditions for returning the Defendant knew the

 A plaintiff alleging retaliation under the FMLA must show: (1) he exercised rights afforded by the FMLA; (2) he suffered an adverse employment action; and (3) there was a causal connection between his exercise of rights and the adverse employment action. *Smith v. Allen Health Systems,* 302 F.3d 827, 832 (8th Cir.2002). For the reasons discussed below, the facts in this case do not support an FMLA claim under a retaliation theory.

 Even if the Court accepts (1) that Heyne's "forced, unrequested FMLA leave" constituted an exercise of his FMLA rights, and (2) that Heyne's alleged "forced resignation"—*i.e.* requiring Heyne to stand for his entire shift when HGI knew he was unable to do so—constituted an adverse employment action, there is no causal link between the two. In other words, there is simply no evidence that Heyne's "forced resignation" was the result of the exercise, or attempted exercise of his FMLA rights. To the contrary, Heyne's entire theory in this case is that HGI refused to provide reasonable accommodation for his chronic back pain, and this failure to accommodate is what forced Heyne's resignation, *not* his placement on FMLA leave. Heyne's argument appears to be that the act of being placed on forced or involuntary leave supports a claim of retaliation under the FMLA. Forced or involuntary leave is not, however, in and of itself, actionable under the FMLA. *See Moss v. Formosa Plastics Corp.,* 99 F.Supp.2d 737, 740–41 (M.D.La.2000) (noting that "nothing in the FMLA statute or any of the supporting regulations prohibited [an employer] from requiring [an employee] to take unpaid leave."); *Sista v. CDC Ixis North America, Inc.,* 445 F.3d 161, 175 (2nd Cir.2006).[13] HGI's motion for summary judgment with respect to Heyne's claim under the FMLA is granted.

## III. CONCLUSION

For the foregoing reasons, HGI's motion for summary judgment is GRANTED.

IT IS ORDERED.

Plaintiff would not be able to fulfill." Plaintiff's Br. at 10. A claim that an employee suffered an "adverse employment action" is fundamentally a claim for retaliation. However, Heyne's complaint also states that HGI "refused to provide [Heyne] with twelve weeks medical leave and retain [Heyne] in his original or substantially equivalent position," Complaint § 35, which appears to be a claim for interference with his FMLA rights. In his brief, however, Heyne does not advance this argument, and provides no record citations to support this claim. This Court, therefore, considers Heyne's claim under the FMLA to be one for retaliation.

13. There is, of course, the possibility that an employer can "interfere" with an employee's right to FMLA leave by forcing the employee to take leave that he or she did not request or need. Such an "involuntary leave claim is really a type of interference claim." *Wysong v. Dow Chemical Co.,* 503 F.3d 441, 449 (6th Cir.2007). Such a claim, however, "ripens only when and if the employee seeks FMLA leave at a later date, and such leave is not available because the employee was wrongfully forced to use FMLA leave in the past." *Id.* (internal citation omitted). There is no allegation in the present case that this theory of interference applies to Heyne.